[No. 4673.]

THE PEOPLE EX REL. THE COLORADO BAR ASSOCIATION v. EWING ROBINSON.

1. **Attorneys at Law—Disbarment—Indebtedness to Client.**

   Where an attorney has not been guilty of any fraud or deception towards his client, the fact that he may owe his client a balance of an account growing out of the relation between them of attorney and client will not be entertained as the subject of a proceeding to disbar, when it appears that such balance is the subject of a bona fide dispute.

2. **Attorneys at Law—Disbarment—Evidence.**

   In a proceeding to disbar an attorney at law on the ground of failing to return to his client an abstract of title belonging to her, where there was evidence tending to prove that all papers belonging to her, including the abstract, were turned over to her,

her testimony that the abstract was not amongst the papers received, but that she did not discover its absence for several months after receiving the papers, was insufficient to show that respondent had appropriated to his own use, or wilfully withheld from her, the abstract of title.

3. Same—Raising Note.

In a disbarment proceeding, a charge against respondent of raising the amount of a promissory note after its execution and delivery, should be clearly established by the proof to justify a disbarment.

4. Same—Misstatements to Clients.

A misstatement by an attorney to his client which does not defraud the person to whom it is made, or deceive him to his prejudice, is not sufficient to justify disbarment.

5. Attorneys at Law—Disbarment—Assisting Client to Avoid Attachment—Fraud of Client—Evidence.

The fact that an attorney advised and assisted his client to remove property to avoid the attachment of a party claiming to have been defrauded by the client, would not justify the disbarment of the attorney where, prior to the removal of the property, the client had undergone a preliminary examination on the charge of fraud and had been set at liberty by the examining magistrate.

6. Attorneys at Law—Disbarment—Exorbitant Fees.

Where a client voluntarily executed and delivered to his attorney certain securities for professional services and for procuring bail for the client and assisting him in raising money, and the securities were foreclosed by the attorney, the question as to whether or not the attorney's charges were unreasonably large and whether or not he should account to his client for any of the money received, will not be determined in a disbarment proceeding against the attorney.

7. Attorneys at Law—Disbarment.

The fact that an attorney at law, by foreclosing a chattel mortgage on household furniture executed to him by his client for a debt due him, worked a hardship upon the family of the client, is not ground for disbarment.

8. Same.

A charge against an attorney at law of misconduct in attempting to establish a liability upon an injunction bond, where the acts occurred between four and five years prior to the filing of disbarment proceedings, and where at the time of the acts, when the facts were brought out in court, the attorney promptly admitted his mistake and realized his wrong, and no

one was substantially injured by his action, and the whole mat-
ter was made public and published in the daily press at the
time, will not be held sufficient for disbarment after the lapse
of so long a time, whether or not the acts at the time would
have been sufficient to justify disbarment.

### Original Proceeding for Disbarment.

Mr. N. C. MILLER, attorney general, and Mr. GEORGE L. HODGES, for relator.

Mr. O. E. LE FEVRE, Mr. H. B. BABB, and Messrs. MORRISON & DE SOTO, for respondent.

*Per Curiam.*—Respondent is charged with unprofessional conduct by an information embracing six counts, as follows:

(1) Failure to pay over to Mrs. Buffington the sum of twenty-five dollars.

(2) Failing to return her an abstract of title.

(3) In raising a note.

(4) Failure to pay over to Mr. Ames a sum of money collected for him on an account.

(5) The wrongful appropriation of sixteen hundred dollars belonging to Peter Johnston, and in aiding him to prevent this money from being reached by attachment; the wrongful appropriation of equities in real estate belonging to him; the wrongful foreclosure of a chattel mortgage given by him to respondent; and the conversion of certain jewels whereby the family of Johnston were left destitute, and because of exorbitant and unreasonable fees charged as an attorney for the purpose of absorbing the property in his hands belonging to Johnston.

(6) Unprofessional conduct in attempting to establish a liability upon an injunction bond.

1. It appears that several years prior to the date when the information was filed, respondent had been employed by Mrs. Buffington to loan money

which she placed in his hands for that purpose. This employment extended over a period of a little more than a year. In the course of this employment he collected interest and made charges for services rendered and for disbursements on her account. It seems, also, that during part of this time she occupied a house belonging to him, for which she was charged rent. The result was, that a dispute seems to have arisen between respondent and his client with respect to some of the items of this account. On his part he claims that it was fully settled and paid, and there is testimony tending to prove this assertion. After this alleged settlement, it seems that Mrs. Buffington was dissatisfied with some of the items and returned for the purpose of having the account corrected, and made a demand upon him for certain items which she claimed were improperly charged against her. Respondent appears to have corrected the account, and asserts that he has paid the balance agreed upon at this second settlement. Whether or not the respondent owes Mrs. Buffington twenty-five dollars, or any other sum, as a balance of the account between them, is immaterial in this inquiry. That question is a proper subject of investigation in a civil action, where, as in this instance, it clearly appears that respondent has not been guilty of any fraud or deception toward his client. The fact that an attorney may owe his client a balance of an account growing out of that relation between them will not be entertained as the subject of a proceeding to disbar, when it appears that such balance is the subject of a *bona fide* dispute.

2. In the course of loaning money for Mrs. Buffington, an abstract of title to property upon which she had made a loan was received by respondent. It is charged that he has appropriated this abstract to his own use. There is testimony tending to prove

that all papers belonging to her, including this abstract, were turned over to her. She claims, however, that the abstract was not among such papers, but does not appear to have discovered that fact until several months after the date when, according to the testimony, she may have received it. So far as the testimony on this count is concerned, if it is not sufficient to establish that the abstract was returned to Mrs. Buffington, as claimed, it certainly fails to show that respondent has appropriated it to his own use, or wilfully withholds it from her.

3. By the third count it is charged that respondent raised a note originally for the sum of $65.00 to read $75.15. The most that can be claimed on this question on the part of relator is, that the testimony is conflicting. The testimony of experts, however, who examined the note and made the usual tests, is unequivocally to the effect that it was not changed in any way after it was signed. Certainly, in the face of this testimony, the charge is not proven. It involves the commission of a serious crime, and should be clearly established.

4. Respondent was employed by Mr. Ames to collect an account. He sent it to another attorney at the place where the debtor resided. It appears that four dollars was collected on the claim, one-half of which was remitted to the respondent. Later, Mr. Ames made inquiries of the respondent regarding this collection, and was informed by him that the records of his office showed that nothing had been collected. Whether this statement was intentionally false, or an honest mistake, is not altogether clear. Respondent, in explaining the method of keeping a record of collections, and where the entry of the two dollars received appeared, tended to prove that he may have been honestly mistaken when he informed Mr. Ames that nothing had been collected. This, however, in

the circumstances, is not the material or crucial question. According to the testimony, which is undisputed, respondent was entitled to the full two dollars as the minimum charge on account of the collection in question, and Mr. Ames was not defrauded or deceived by the statement made. A misstatement by an attorney which does not defraud the person to whom it is made, or deceive him to his prejudice, is not sufficient to justify disbarment.

5. The testimony relative to the transactions with Peter Johnston, which form the basis of the fifth charge, is quite voluminous, and it can serve no useful purpose to notice it in detail, or to analyze its alleged inconsistencies. Johnston was charged with an offense against the federal laws, and employed respondent to defend him. At the time of this employment, he had sixteen hundred dollars and other valuables in a safety deposit vault. The party whom he had defrauded was seeking to seize property of Johnston, and the latter, for the purpose of avoiding an attachment, removed this property from the safety vault and placed it in the hands of respondent at the rooms of the deposit company. The testimony of respondent is to the effect that he took this property to his office; that he and his partner agreed it had better be placed in the safe of a third party; that it was accordingly put in a sealed package, and placed in the safe of a well-known attorney, and that the package contained the money in question. These statements are corroborated by the testimony of his partner, who, as well as the respondent, says he thinks Johnston was present when the package was made up. Johnston denies that he was present, but the young lady in charge of the safe in the office in which the package was deposited corroborates the statement that Johnston was probably present. The directions were to deliver the package to Peter Johnston, thus

placing it entirely beyond the control of the respondent. The testimony is undisputed that this package was subsequently delivered to Johnston in the condition received, but he claims that the sixteen hundred dollars was not in the package at this time. The statement of Johnston that the money was not in the package is flatly denied by respondent. Our attention is directed to other testimony tending to prove, so it is argued by counsel for relator, that respondent must have in some way obtained possession of, and retained, this money; but without attempting to state those matters upon which relator relies to establish the receipt of the money by respondent, it is sufficient to say that the testimony on the subject, as a whole, is not of that clear, convincing and satisfactory character which would justify a finding against respondent on this question.—*People ex rel. v. Benson,* 24 Colo. 358.

The purpose of Johnston in removing the money and other valuables on deposit in the safety vault appears to have been to avoid an attachment. Respondent, apparently, advised him as to the best course to pursue, but the advice given certainly did not involve any moral turpitude on the part of respondent, or tend to prove in the slightest degree that he was attempting to aid his client in the commission of a fraud. It is urged he knew at this time that Johnston had been guilty of defrauding another out of this money. We do not so understand the testimony. Prior to the date when the money was removed from the deposit vault, Johnston had been set at liberty by the magistrate before whom the preliminary examination was held in a prosecution brought against him on account of the transaction through which the money was received. The respondent represented Johnston at this hearing. If, after an exhaustive examination, the magistrate was satis-

fied from the testimony that the charge of fraud which constituted the crime for which Johnston had been arrested was not established, his counsel would seemingly be justified in believing that his client was not guilty of any offense.

The remaining charges embraced in count 5 may be considered together. Johnston was subsequently prosecuted and convicted of a crime growing out of the transaction by which he obtained the sixteen hundred dollars. There were also suits brought against him based upon the same transaction. In all these suits and proceedings respondent represented him as counsel. He also appears to have gone upon his bonds. For the purpose of securing respondent on account of the obligations assumed, and securing to him the payment of attorneys' fees, Johnston conveyed to him equities in real estate, and also through him obtained money on a chattel mortgage given on household furniture. The conveyances were made for the express purpose of securing respondent. He appears to have devoted considerable time in looking after the interest of his client. Whether or not the fees charged were more than respondent was reasonably entitled to, is a question which might well be the subject of litigation in a civil action between the respondent and Johnston, but it has no place in a proceeding to disbar, where it appears that Johnston voluntarily gave the respondent the securities he did, and for the express purpose of securing him his fees, and upon the obligations which he assumed when he signed his bonds.

The jewelry mentioned is held by respondent on account of a balance which he claims Johnston is owing him on account, and we shall not attempt to determine in this proceeding whether that balance is due respondent or not. A court of law can settle that question.

The alleged wrongful appropriation of equities in real estate consisted simply of the respondent selling certain property which had been conveyed to him by Johnston for the purposes already noticed. Whether the action of respondent in this respect is right or wrong, or whether he should account to Johnston for any money thus received, presents matters which the parties should either settle between themselves, or, if they cannot agree, a court, in an appropriate proceeding, can give Johnston the relief to which he is entitled if he should establish that the charges of respondent against the funds coming into his hands were unreasonably large.

These observations dispose of the questions raised on account of the chattel mortgage, except the one that respondent wrongfully foreclosed it, to the detriment of the family of Johnston, unless we add, which appears proper from the testimony, that it was given for a debt which both parties to it agree was due, and to secure a loan which was made. It may have worked a hardship upon the family of Johnston to be deprived of the property which this mortgage covered, but because this result may have followed the action of respondent in enforcing his claim does not render him legally liable to either Johnston or his family, and much less to a proceeding for disbarment.

6.  The sixth and last count presents the ·most serious question in this proceeding. There can be no doubt but that respondent was guilty of· improper conduct in attempting to establish a liability on an injunction bond. We shall not attempt, however, to determine whether the acts charged and proven under this count would be sufficient to justify disbarment, because circumstances in connection with this matter relieve the court from the responsibility of passing directly upon that question. The acts complained of occurred between four and five years before the

information was filed. Respondent, when the facts in connection with the affair were brought out in court, realized he had done wrong, and promptly admitted his mistake. No one was substantially injured by his action. The whole matter was made public and published in the daily press. This publicity has, in our judgment, after the lapse of so long a period, been a sufficient punishment for respondent, and in view of the fact that he has promptly admitted his wrong, and made such reparation as he could, we do not believe that any beneficial end would be accomplished by inflicting a punishment at this time, even if justified originally.

There seems to be an inclination on the part of some of counsel for respondent to criticise relator. This is not justified. The record with respect to some of the charges certainly discloses a state of affairs which fully warranted the relator in taking the steps it did; in fact, imposed upon it the duty of so doing. The explanation of respondent as to these matters is not of that satisfactory character which would justify us in saying that he is fully exonerated; but for the reasons given in disposing of each specific charge, we shall direct that the rule on respondent be discharged and the proceedings dismissed.

*Rule discharged and proceedings dismissed.*

STEELE, J., not sitting.